BUCHANAN SERVICE, INC., a corporation of the State of Delaware, Plaintiff, v. LLOYD D. CREW, Defendant.

(*April* 25, 1956.)

HERRMANN, J., sitting.

*William Prickett* for the plaintiff.

*Houston Wilson* for the defendant.

Superior Court for Sussex County, No. 132, Civil Action, 1953.

HERRMANN, J.:

This is an action for damages arising from an automobile accident. The complaint alleges that the defendant was negligent (1) in failing to keep his vehicle under proper control; (2) failing to exercise due care and caution; (3) failing to drive upon the right half of the highway; and (4) failing to yield half of the main-traveled portion of the highway. The defendant denies negligence, asserts the contributory negligence of the plaintiff and, in his answer and counterclaim, the defendant alleges that the plaintiff "had the last clear chance to avoid the accident."

Pursuant to Civil Rule 33, *Del. C. Ann.*, the plaintiff served the following interrogatory upon the defendant:

"Specify the negligence of which you were guilty which is the basis for the averment that the plaintiff had the last clear chance to avoid the collision."

The defendant answered this interrogatory as follows:

"The defendant-counter-plaintiff construes this Interrogatory as actually making this inquiry:

" 'What are the facts upon which you base your contention that the last clear chance doctrine may be applied in your favor?'[1]

---

[1]See *Pfeifer v. Johnson Motor Lines, Inc.,* 8 *Terry* 191, 89 *A.* 2d 154.

"Said facts follow:

"On November 3, 1952, after dark of a cloudy, windy, rainy day, defendant-counter-plaintiff was operating his vehicle in a southerly direction on a two-lane two-way highway known as Route 14, in Sussex County, Delaware, at a time and place when such roadway was wet and rain water had accumulated on the road and shoulders thereof. Defendant-counter-plaintiff was proceeding at a speed of not exceeding forty (40)' miles an hour with both headlights upon his said vehicle lit and in good working order, along the extreme right portion of the southbound traffic lane in order to safely meet and pass numerous vehicles proceeding along said highway in a northerly direction at varying rates of speed and on occasion in close and dangerous proximity to the center line of said highway.

"While thus proceeding, the right rear wheel of the vehicle of the defendant-counter-claimant slipped from the paved surface of the roadway into a water filled depression or gutter along the western edge thereof, the existence of which was then unknown to the defendant-counter-plaintiff. Thereby, the vehicle of the defendant-counter-plaintiff was momentarily forced out of his control and the front-end thereof was forced to its left, towards the center line of said highway.

"The defendant-counter-plaintiff immediately brought his vehicle to a full stop in such a position that its right rear wheel remained in said water filled depression or gutter and the left front wheel thereof was at or near the center line of said highway. According to his best judgment, no part of the defendant-counter-plaintiff's vehicle extended over the center line into the north-bound traffic lane of said highway when it came to a full stop.

"While his vehicle was in this stopped position across the south-bound traffic lane of the highway, with both of its headlights lit and in good working order, and before the defendant-counter-plaintiff could maneuver his vehicle out of its then stopped position upon said highway, the vehicle of the plaintiff-

counter-defendant, which was travelling in a northerly direction upon said highway, approached and struck the vehicle of the defendant-counter-plaintiff while it was still in said stopped position.

"Between the time that the defendant-counter-plaintiff stopped his vehicle upon said highway, as aforesaid, and the time that the vehicle of the plaintiff-counter-defendant struck the same, the following events transpired, in the following chronological order:

"(A) A third motor vehicle proceeding in a northerly direction approached and safely passed the stopped vehicle of the defendant-counter-plaintiff, within a matter of from two to three seconds.

"(B) Thereafter the defendant-counter-plaintiff looked to his extreme left, or the north, to ascertain if his vehicle was endangering following traffic on said highway, which consumed an additional one or two seconds.

"(C) The defendant-counter-plaintiff then looked to his right and noted the approaching headlights of the plaintiff-counter-defendant's vehicle approaching from the north at a then distance of about two hundred fifty (250) feet away, which consumed about another second.

"(D) The defendant-counter-plaintiff then put the automatic gearshift lever of his own vehicle into reverse position in order to move his vehicle off the paved portion of the highway and started to depress the accelerator thereof, which took about an additional three seconds.

"Wherefore, according to his best estimation, the defendant-counter-plaintiff says that his vehicle had remained on the highway in a stopped position before being struck by the plaintiff-counter-defendant's vehicle for a time interval of from seven to nine seconds, during which interval his said vehicle and the lighted headlights thereof were plainly visible to the driver of the plaintiff-counter-defendant's vehicle approaching from the south.

"Without affecting any other claim or defense proffered by him with which it may be inconsistent, the defendant-counterplaintiff admits, at least arguendo, that he may have been guilty of failing to keep a proper lookout for the water filled depression or gutter along the edge of the road, as aforesaid, or that he may have been guilty of failing to keep his vehicle under proper control."

The foregoing answer is the defendant's second attempt to furnish a satisfactory answer to the interrogatory. See *Buchanan Service, Inc., v. Crew,* 9 *Terry* 392, 104 *A.* 2d 797, 799. There, the defendant attempted to premise his answer upon an absolute denial of any negligence on his part. He was instructed that a particularization of last clear chance required him to "specify (1) facts denoting some negligence of which he may have been guilty and (2)' the facts which are the basis for the contention, implicit in the allegation of last clear chance, that such negligence was antecedent and not concurrent with the plaintiff's negligence and that such negligence was a remote cause and not a proximate cause of the accident." It was also there stated:

"Essential to consideration of the last clear chance doctrine is contemplation of some act of negligence by the party who seeks to invoke the doctrine. Although contemplation of his own possible negligence may be quite distasteful to the defendant, nevertheless, he is unable to seek the protection of the doctrine without admitting, arguendo at least, that he may have been guilty of some act of negligence."

Compare *Lord v. Poore,* 9 *Terry* 595, 108 *A.* 2d 366, 371.

The plaintiff now moves to strike the last paragraph of the defendant's answer upon the ground that it is argumentative and unresponsive. The plaintiff contends that an answer under oath to an interrogatory may not be couched in such equivocal terms and may not be thus conditioned and limited. It states that interrogatories and answers thereto are part of the discovery process for the ascertainment of facts and that they should not be "confused" with the pleadings.

■ I am unable to agree with these views. As was stated in *Pfeifer v. Johnson Motor Lines, Inc.,* 8 *Terry* 191, 89 *A.* 2d 154, the discovery devices are designed to fulfill the function of issue formulation as well as the function of fact revelation. Since pleading has been streamlined and restricted to the limited scope of notice-giving, the function of formulating and clarifying the issues has passed from the pleadings to the discovery devices and the pre-trial conference. There being nothing in the Rules to indicate otherwise, legal issues and the contentions of the parties as to what the facts are, as well as the facts themselves, are open to discovery.

In the *Pfeifer* case, it was recognized that the interrogatory device could be useful as an auxiliary to the pleadings. The use of the interrogatory was there sanctioned for the purpose of enabling a party to procure a particularization of the skeleton allegation of last clear chance. That is the specific mission on which the plaintiff sends its interragotory in the instant case.

As thus used, the interrogatory and the answer thereto become an adjunct to the pleadings. They become the devices whereby the issues in the case are crystallized and the contentions of the parties, including the theories of their counsel, are clarified and made known before trial. The propriety of this usage of the interrogatory is settled. See 4 *Moore's Federal Practice* (2d Ed.) pp. 2310-2312; *The Practical Operation of Federal Discovery,* 12 *F. R. D.* 131, 160-164; *Laskowski v. Atomic Cleaners & Dyers,* 8 *Terry* 198, 89 *A.* 2d 157; *Pfeifer v. Johnson Motor Lines, Inc.,* 8 *Terry* 191, 89 *A.* 2d 154.

■ When used as an adjunct to the pleadings for the purpose of clarifying the contentions of the pleader, the interrogatory is exposed to the operation of Rule 15 which pertains to amendment of pleadings and to Rule 8(e) (2) which authorizes inconsistent alternate and hypothetical pleadings. See 4 *Moore's Federal Practice,* p. 2312. In stating contentions in a pleading, a party may be inconsistent either in the statement of facts or in the legal theories adopted and he is not required to

elect upon which legal theory he will proceed. See 2 *Moore's Federal Practice,* pp. 1698, 1708. When used as an extension of a pleading, the answer to an interrogatory must take on some of the flexibility of a pleading. Hence, it becomes a far more elastic thing than is the case when it fulfills the more ordinary function of disclosure of facts.

The last paragraph of the answer to the interrogatory may not be insulated and treated separately. The whole answer must be viewed in the light of the special usage to which it is put. When thus viewed, the answer may not be tested by the usual standards of certainty and definiteness that may be applicable when the interrogatory is used for the ascertainment of fact.

I am of the opinion that the defendant's answer constitutes a satisfactory response to the plaintiff's interrogatory. In stating that the answer is satisfactory, I do not mean to indicate that I think it is sufficient to establish and support the last clear chance doctrine as an issue in this case. The effectiveness of the defendant's assertion that last clear chance is an issue for trial may now be tested, at pre-trial conference or upon appropriate motion, in the light of *Lord v. Poore,* 9 *Terry* 595, 108 *A.* 2d 366, the latest pronouncement of the Supreme Court upon the subject.

The motion to strike will be denied.