# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MARSHALL FAMILY PROPERTIES, LLC, | ) | |
| | ) | |
| | ) | |
| Petitioner and Counterclaim Defendant, | ) | |
| | ) | |
| | ) | |
| v. | ) | C.A. No. 2023-0992-CDW |
| | ) | |
| THOMAS M. FUSCO, EILEEN F. FUSCO, AUGUSTO PALMIERI, and LAN WANG, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Respondents and Counterclaim Plaintiffs. | ) | |

## REPORT GRANTING
## PETITIONER'S MOTION TO STRIKE

Date Submitted: October 6, 2025
Date Decided: January 28, 2026

Steven A. Spence, MELUNEY ALLEMAN & SPENCE, LLC, Lewes, Delaware; *Counsel for Petitioner and Counterclaim Defendant Marshall Family Properties, LLC*

Robert J. Valihura, Jr. and Sean M. Quinn, MORTON, VALIHURA & ZERBATO, LLC, Greenville, Delaware; *Counsel for Respondents and Counterclaim Plaintiffs Thomas M. Fusco, Eileen F. Fusco, Augusto Palmieri, and Lan Wang*

**WRIGHT, M.**

Petitioner Marshall Family Properties, LLC[1] has filed a Motion to Strike ("Motion"),[2] asking the court to prohibit respondents Thomas M. Fusco, Eileen F. Fusco, Augusto Palmieri, and Lan Wang from using in their post-trial briefing a property deed from 1948 that respondents did not include on the joint exhibit list or use at trial. For the reasons explained below, I grant the Motion.

## I. BACKGROUND

On October 2, 2023, petitioner filed a petition to quiet title and for declaratory judgment.[3] The real property at issue is an approximately 18-feet-wide by 2,500-feet-long strip of land that borders the Oyster Rocks subdivision and the Holland Farm along Delaware Route 1 near Milton ("Strip").[4]

On December 18, respondents answered the petition and asserted counterclaims against petitioner for slander of title and adverse possession.[5] In their counterclaim, respondents alleged that "[t]he deeds constituting chain of title to the entire Fusco Residence [including part of the Strip] are attached

---

[1] For brevity, this report omits the parties' counterclaim designations.

[2] Dkt. 51.

[3] Dkt. 1.

[4] *Id.* ¶¶ 9–18; Dkt. 10 Ans. ¶¶ 9–18, Countercl. ¶¶ 9–17.

[5] *See generally* Dkt. 10.

hereto as **Exhibit C**"[6] and "[t]he deeds constituting the chain of title to the Palmieri residence [including part of the Strip] are attached hereto as **Exhibit D**."[7] Respondents seek a declaratory judgment that they "acquired their respective Residences by valid deeds, which include all lands, including the disputed portion of the Residences[,]" and thus "are the sole record owners of the entirety" of their respective properties.[8] The attached deeds are dated November 20, 2001 to December 16, 2004 and to February 1, 2005 for the Fusco and Palmieri residences, respectively.[9]

The parties subsequently engaged in discovery.[10] On January 25, 2024, petitioner served its First Set of Interrogatories Directed to Respondents and its First Set of Requests for Production Directed to Respondents.[11] Several of the discovery requests, and respondents' responses to them, are relevant here:

- Interrogatory Nos. 4 and 5 asked respondents to "[i]dentify the property records or other documents you contend show the

---

[6] Countercl. ¶ 10, Dkt. 10 (emphasis in original).

[7] *Id.* ¶ 14 (emphasis in original).

[8] *Id.* ¶¶ 19 & 21.

[9] *See id.* Exs. C–D.

[10] *See* Dkts. 12–13, 20–26. This was a one-sided affair, as the docket reflects that respondents did not propound any written discovery or notice any depositions.

[11] Dkt. 12.

[respondents] are records owners of a portion of the Strip."[12] Respondents replied by stating that they "rely on the deeds evidencing the chain of title . . . which are attached to [the] Answer and Counterclaim."[13]

- Interrogatory Nos. 15–17 asked respondents to "[s]tate the factual basis for, identify all documents and communications that concern, and identify all [p]ersons with knowledge concerning [respondents'] denial of" three allegations in the petition.[14] Respondents, again, referred petitioner to the title records "attached to the Answer and Counterclaim . . . ."[15]

- Request for Production Nos. 1, 21, and 28 asked respondents to produce, respectively, "[a]ll documents" that (1) respondents relied upon in responding to the interrogatories, (2) support respondents' affirmative defenses, and (3) respondents

---

[12] Resp'ts and Countercl. Pls. Thomas M. Fusco, Eileen F. Fusco, Augusto Palmieri, and Lan Wang's Answers to Pet'r Marshall Family Props. LLC's First Set of Interrogs. Directed to Resp'ts, Dkt. 51 Ex. 2 at 12.

[13] *Id.* at 12, 13.

[14] *Id.* at 19–20. The three allegations describe the Strip and historical access to the Strip and the Holland Farm from Fleming Lane, an approximately 1,000-feet-long road that connects to Delaware Route 1. *See* Dkt. 1 at ¶¶ 9-10, 12.

[15] Dkt. 51 Ex. 2 at 19–20.

intend to rely on at trial.[16]  Respondents stated they would "produce all non-privileged documents" response to Request Nos. 1 and 21.  As to Request No. 28 (trial documents), they "had not identified any documents" yet but "when such documents are identified, all such documents would be produced."[17]

On July 5, 2024, the court entered the parties' proposed scheduling order.[18]  Paragraph 1(i) of the Scheduling Order required respondents to provide "all additions" to the joint exhibit list to petitioner by January 10, 2025, and permitted the parties to "add joint exhibits to the list in good faith until the date of trial, provided that reasonable notice and the opportunity to object are given to the other side."[19]

On January 28, 2025, the court entered the parties' proposed pretrial order.[20]  Three paragraphs, which I quote in full, set forth the pertinent parts of the parties' agreement regarding the use of documents at trial:

> 2.     The parties reserve the right to use at
> trial for any purpose any exhibits designated by any

---

[16] Resp'ts and Countercl. Pls. Thomas M. Fusco, Eileen F. Fusco, Augusto Palmieri, and Lan Wang's Answers to Pet'r Marshall Family Props. LLC's First Reqs. for the Produc. of Docs. to Resp'ts, Dkt. 51 Ex. 3.

[17] *Id*.

[18] Order Governing Case Schedule, Dkt. 15 ("Scheduling Order").

[19] *Id.* ¶ 1(i).

[20] *See* Joint Pre-Trial Stipulation and Order, Dkt. 34 ("Pretrial Order").

party on the Joint Exhibit List, to use any documents of which the Court may take judicial notice, and to use additional exhibits at trial in response to testimony or other evidence offered by the other side as rebuttal evidence and for impeachment subject, in all cases, to any objection to such use.

3.      The parties reserve the right to supplement, in good faith, the Joint Exhibit List up to the beginning of trial, provided that reasonable advance notice and the opportunity to object shall be provided to the other party with respect to any additional exhibit.

4.      The parties reserve the right to use documents not identified on the Joint Exhibit List for impeachment or rebuttal purposes. Documents used solely for impeachment purposes shall not be considered evidence.[21]

The Pretrial Order also confirmed that the dispute between the parties with respect to record title—whose chain of deeds is superior—remained fully joined.[22]

The court held a three-day trial on February 3 through 5, 2025.[23] On the final day of trial, after the conclusion of the parties' presentations, the

---

[21] *Id.* ¶¶ VIII.2–VIII.4.

[22] *Id.* ¶¶ IV.A.1 ("Petitioner seeks a declaration that it is the true record owner of the property known as the Strip."), IV.B.1 ("Respondents seek a declaration that (i) Mr. and Mrs. Fusco are the sole record owners of the entirety of the Fusco Property; (ii) Mr. Palmieri and Ms. Wang are the sole record owners of the entirety of the Palmieri Property and that (iii) Petitioner has no interest or rights of any kind in or over either Property."), IV.B.3 ("Respondents seek an award of damages for the slander of title to their respective Properties in the amount proven at trial.").

[23] Dkt. 39.

court and counsel began discussing what respondents' counsel referred to as "housekeeping things."[24] After handing over copies of property searches discussed during respondents' opening statement, respondents' counsel said he had "one last thing" and presented a property deed from 1948—a document not on the exhibit list and not discussed at trial—that counsel wanted to admit as a trial exhibit ("1948 Deed").[25] Respondents claimed the 1948 Deed was referenced in their cross-examination of petitioner's land surveyor expert witness, Christopher Waters, and is mentioned in JX 9.[26] Petitioner's counsel said it was their "first time seeing" the 1948 Deed and petitioner would "reserve [its] objection . . . in briefing" because no witnesses testified about it and petitioner's expert did not have the opportunity to examine and testify about it at trial.[27]

---

[24] *See* Trial Tr. Vol. III at 661, Dkt. 43.

[25] *Id.* at 665–66. The 1948 Deed is also referred to by the parties as Exhibit 44 and JX 44.

[26] *Id*. at 666 ("I brought up in my cross-examination of the expert the deed which is [JX] 9. That's already filed, Your Honor, of record. And in that deed I pointed out there was a 'being' clause, and it refers to a deed, and this is that deed that was referred to in that 'being' clause."). The court can discern no discussion of JX 9 or the call to the 1948 Deed within JX 9 during respondents' cross-examination of Waters. *See generally* Trial Tr. Vol. I at 191–236, Dkt. 41. It appears, instead, that respondents briefly referenced the call to the 1948 Deed in JX 9 during their cross-examination of Jonathan Horner, Esquire, General Counsel of non-party Schell Brothers, LLC, who testified before Waters. *See id.* at 123–26. The parties referred to JX 9 as the "Hastings Deed" throughout trial.

[27] Trial Tr. Vol. III at 666–67, Dkt. 43.

The court reserved judgment on the 1948 Deed and permitted petitioner to address the evidentiary issue "in connection with post-trial briefing."[28] The court noted that the issue was "presented to [the court] at the end of trial with . . . no explanation as to why it couldn't have been produced during the litigation."[29] On April 16, the court conducted a site visit at the Strip with counsel and several of the parties present.[30] On May 21, the court granted the parties' proposed posttrial briefing schedule, with briefing taking place between June 13 and September 26.[31]

On June 13, petitioner filed its Post-Trial Opening Brief.[32] On July 25, respondents filed their Post-Trial Answering Brief and Opening Brief on the Counterclaim ("Consolidated Brief").[33] In the Consolidated Brief, respondents relied heavily on the 1948 Deed—directly citing it eight times, and referring to it 13 more times, to support their claim that their record title to the Strip is superior to petitioner's.[34]

---

[28] *Id.* at 667.

[29] *Id*.

[30] Dkt. 44.

[31] Dkt. 46.

[32] Dkt. 48.

[33] Dkt. 50.

[34] *See generally id*.

On August 6, petitioner filed the Motion, with an accompanying Motion to Suspend Briefing Schedule.[35] Respondents filed a consolidated opposition to both of petitioner's motions the next day[36] and petitioner filed its reply the day after.[37] The court determined that the Motion needed to be briefed and argued, and that the posttrial briefing schedule could not accommodate the court's consideration of the Motion.[38] On August 8, the court adjourned the posttrial briefing schedule, set deadlines to complete briefing the Motion,[39] and scheduled a hearing on the Motion for September 23.[40]

On September 9, respondents responded to the Motion.[41] Petitioner replied one week later.[42] On September 23, the court heard oral argument on the Motion[43] and instructed respondents to submit a supplemental letter to the court to answer questions the court raised at the hearing as to when

---

[35] Dkts. 51–52.

[36] Dkt. 55.

[37] Dkt. 60.

[38] Dkt. 62.

[39] *Id.*

[40] Dkts. 63–64.

[41] Dkt. 65 ("Opposition").

[42] Dkt. 66.

[43] *See* Dkt. 68.

respondents first obtained a copy of the 1948 Deed.[44]  Respondents filed the supplemental letter on October 6.[45]  In their letter, respondents said that they possessed the 1948 Deed since January 20, 2025.[46]  The court then took the Motion under advisement.

## II.   ANALYSIS

Petitioner moves to strike "all arguments regarding [the 1948 Deed] . . . from" the Consolidated Brief under Court of Chancery Rule 26, the Scheduling Order, and the Pretrial Order.[47]  Petitioner contends that respondents did not provide the 1948 Deed in discovery or supplement their production by the deadline set in the Scheduling Order.[48]  Petitioner also contends that the Pretrial Order only permitted the parties to supplement the Joint Exhibit List by the start of trial, and limited the parties' use of documents not identified in the Joint Exhibit List to impeachment or rebuttal.[49]  Petitioner concludes that the 1948 Deed's use in the Consolidated Brief violates both the

---

[44] *Id.*

[45] Dkt. 72.

[46] *Id.* at 1.

[47] Dkt. 33; Mot. ¶¶ 4–8.

[48] Mot. ¶¶ 4–8

[49] *Id.* ¶ 9.

Scheduling Order and the Pretrial Order and must therefore be stricken from respondents' posttrial argument.[50]

Respondents vigorously dispute petitioner's characterization of their use of the 1948 Deed. Contrary to petitioner's reading, they counter, the 1948 Deed is a "record being offered and used for rebuttal purposes[,]" that is also incorporated by reference into JX 9.[51] Respondents contend that the 1948 Deed is only presented in the Consolidated Brief to undermine petitioner's use of JX 9, so they did not violate the Pretrial Order, nor ignore their discovery obligations.[52] In the alternative, respondents say the 1948 Deed is a public record the court can judicially notice on its own and that doing so will not prejudice petitioner.[53]

To resolve this dispute, I start by explaining why respondents have violated the applicable discovery rules. I then explain why respondents have violated the Scheduling Order and the Pretrial Order, and why the narrow exceptions in the Pretrial Order for the use of exhibits not disclosed before trial do not apply. I conclude by explaining why precluding use of the 1948 Deed and directing respondents to file a new brief is the appropriate remedy.

---

[50] *Id.* ¶¶ 10–22.

[51] Opp'n ¶ 1.

[52] *See generally id.* ¶¶ 2–16.

[53] *Id.* ¶ 11.

### A. Respondents' Untimely Identification of the 1948 Deed Violated Their Obligations Under the Discovery Rules

Under the Court of Chancery Rules, "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, including the existence, description, nature, custody, condition and location of any documents[.]" Ct. Ch. R. 26(b)(1). Additionally, parties may serve interrogatories that "may relate to any matters which can be inquired into under Rule 26(b)[.]" Ct. Ch. R. 33(c). Each interrogatory must be "answered . . . fully in writing under oath," subject to specific objections stated by the responding party. Ct. Ch. R. 33(b)(1). "[T]he spirit of Rule 26(b) calls for all relevant information . . . to be brought out for inspection not only by the opposing party[,] but also for the benefit of the [c]ourt[.]" *Boxer v. Husky Oil Co.*, 1981 WL 15479, at *2 (Del. Ch. Nov. 9, 1981) (citing *Hercules Powder Co. v. Rohm & Haas Co.,* 3 F.R.D. 302, 304 (D. Del. 1943)).

The Supreme Court "has long recognized the purpose of discovery is to advance issue formulation, to assist in fact revelation and to reduce the element of surprise at trial." *Levy v. Stern*, 1996 WL 742818, at *2 (Del. Dec. 20, 1996) (citing *Buchanan Serv., Inc. v. Crew*, 122 A.2d 914, 917 (Del. Super. 1956)). "'One of a litigant's basic obligations' is 'gathering and producing responsive material in a timely fashion.'" *Principal Growth*

*Strategies, LLC v. AGH Parent LLC*, 2025 WL 3438298, at *13 (Del. Ch. Nov. 28, 2025) (quoting *In re ExamWorks Gp., Inc. S'holder Appraisal Litig.*, 2018 WL 1008439, at *9 (Del. Ch. Feb. 21, 2018)) (cleaned up). Consequently, "Rule 26(e) requires supplementation of discovery responses in certain instances." *OptimisCorp v. Waite*, 2015 WL 357675, at *3 (Del. Ch. Jan. 28, 2015).

A party whose response to an interrogatory was complete when made has a duty to amend their prior response with later acquired information in three circumstances. *See* Ct. Ch. R. 26(e). Relevant to the Motion, a party has a duty to supplement if "the party knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment." Ct. Ch. R. 26(e)(3). The rule does not establish a fixed deadline for supplementing stale discovery responses, but requires action within a reasonable period of time under the specific circumstances of the case. *OptimisCorp*, 2015 WL 357675, at *11 (quoting *Seasonable*, BLACK'S LAW DICTIONARY (9th ed. 2009)). Courts look at when the party learned of the need to supplement, the proximity to trial, and the potential prejudice to opposing parties. *See OptimisCorp*, 2015 WL 357675, at *11 (determining whether the plaintiffs

– 12 –

supplemented their responses in a reasonable time based on when they "came into possession of the information[.]").

Here, respondents created a discovery record that clearly identified the evidence on which they intended to rely at trial to prove they have superior record title to the Strip. That discovery record did *not* include the 1948 Deed. Both sides prepared for trial on that discovery record and the legal theories flowing from it. Then, *after* petitioner's expert testified on the first day of trial, but *before* witness testimony concluded, respondents decided the 1948 Deed might be relevant to their claim that their record title is superior to petitioner's.[54] But respondents did not—while trial was ongoing and the parties' respective cases still open—amend their discovery responses or notify petitioner and the court of their newfound intent to rely on the 1948 Deed. Instead, they waited. Respondents did not disclose that intent until after *every* witness had finished testifying and been excused and the court began discussing "housekeeping" matters with the parties.[55]

This is not how litigation is supposed to be conducted. *See McCaffrey v. City of Wilm.*, 2014 WL 598030, at *3 (Del. Super. Jan. 31, 2014) ("The

---

[54] Tr. of Oral Arg. on Pet'r's Mot. to Strike ("Mot. Tr.") 34–39, 44–49 (questioning on when respondents' counsel determined the 1948 Deed was relevant), Dkt. 74.

[55] *See* Trial Tr. Vol. III at 661, 666, Dkt. 44.

– 13 –

days in which surprise was an acceptable way of proceeding in civil litigation are long over."). Respondents had the 1948 Deed two weeks before trial, even if, as their counsel candidly admits, they did not then know its potential relevance. But they figured it out while trial was underway and waited until after they had finished questioning the last witness, and everyone had moved on to housekeeping matters, before disclosing their intent to rely on the 1948 Deed.[56] I find that, under the circumstances of this case, respondents' actions amount to knowing concealment in violation of Rule 26(e).[57]

## B. Respondents' Untimely Disclosure of the 1948 Deed Violates the Scheduling Order and Pretrial Order

Respondents' posttrial use of the 1948 Deed violates the requirement in the Scheduling Order and the Pretrial Order that additions to the parties' joint exhibit list be done before trial.[58] Respondents do not contest this. Instead, respondents argue that they did not need to disclose their reliance on the 1948 Deed until after witness testimony was concluded under any of three

---

[56] Contrast this with the speed with respondents notified petitioner that a difficult-to-locate witness had responded to their trial subpoena. *See* Trial Tr. Vol. I at 7 ("We immediately told counsel that we had found him."), 11 ("[A]s soon as we had the knowledge where he was, we gave it to counsel, Your Honor, immediately."), Dkt. 41.

[57] *See A. Schulman. Inc. v. Citadel Plastic Hldgs., LLC*, 2018 WL 784734, at *4 (Del. Ch. Feb. 7, 2018) (ORDER) ("failing to provide a timely updated response" amounted to knowing concealment); *OptimisCorp*, 2015 WL 357675, at *11.

[58] Scheduling Order ¶ 1(i); Pretrial Order ¶ VIII.3.

exceptions in the Pretrial Order—because they are using the 1948 Deed for impeachment purposes, they are using it for rebuttal purposes, or I am allowed to take judicial notice of the 1948 Deed. I reject all three rationales.

**1. Respondents Did Not Use the 1948 Deed to Impeach Any Witness**

Respondents argue their post-trial use of the 1948 Deed is permissible under the Pretrial Order because it "impeaches" the trial testimony of petitioner's land surveyor expert by showing that he "relied on a defective interpretation of JX-9."[59] This is incorrect.

First, as impeachment evidence the 1948 Deed is untimely. The Pretrial Order allows the parties to use impeachment evidence "at trial."[60] Respondents are seeking to use the 1948 Deed only in connection with post-trial briefing.

Second, respondents did not use the 1948 Deed as impeachment evidence. Impeachment is "the act of discrediting a witness" or "the act of challenging the accuracy or authenticity of evidence."[61] "The purpose of

---

[59] Opp'n ¶ 10.

[60] Pretrial Order ¶ VIII.2. The separate reference to the use of documents for impeachment purposes in paragraph VIII.4 of the Pretrial Order did not eliminate paragraph VIII.2's "at trial" limitation and give the parties a free-floating right to use, for the first time in post-trial briefing, an exhibit never presented to any witness.

[61] *Impeachment*, BLACK'S LAW DICTIONARY (12th ed. 2025).

impeachment is to destroy credibility, not to prove the facts stated in the impeaching statement."[62]  Here, respondents did not show the 1948 Deed to any witness at trial, including petitioner's expert, in order to discredit the expert's testimony or undermine his credibility.  A document never shown or mentioned to petitioner's expert or other witnesses, nor disclosed to petitioner or the court until a discussion of administrative matters after the conclusion of witness testimony, is not "undermin[ing] Petitioner's Expert through the trial process" as respondents assert.[63]

Third, the Pretrial Order also states that "[d]ocuments used solely for impeachment purposes shall not be considered evidence."[64]  If a document is being used *only* for impeachment purposes, the party planning to use it need not disclose it in advance, but then they cannot rely on it as affirmative evidence to support their claims.  If the party wants to use it both to impeach and for evidentiary purposes, then they must follow the process for admitting it into the record.  Here, respondents attempt to do both—use the 1948 Deed to discredit Waters' testimony *and* use it as evidence supporting their claim that they have record title to the Strip.

---

[62] 81 AM. JUR. 2D *Witnesses* § 770 (citations omitted).

[63] Opp'n ¶ 15 n.16.

[64] Pretrial Order ¶ VIII.4.

### 2. Respondents Are Not Using the 1948 Deed Solely as Rebuttal Evidence

Respondents also argue their post-trial use of the 1948 Deed is permissible under the Pretrial Order because "it is being used to rebut the claim in Petitioner's case-in-chief that JX-9 is somehow defective."[65] This is incorrect.

First, as with impeachment, the 1948 Deed is untimely as rebuttal evidence. The Pretrial Order allows the parties to use rebuttal evidence "at trial."[66] Respondents are seeking to use the 1948 Deed only in connection with post-trial briefing.

Second, respondents are using the 1948 Deed as affirmative evidence that they have record title to the Strip, a proposition for which respondents bear the burden of proof.[67] Respondents' posttrial brief shows this. In the factual background, respondents introduce the 1948 Deed to affirmatively

---

[65] Opp'n ¶ 10.

[66] Pretrial Order ¶ VIII.2. As with impeachment, the separate reference to rebuttal evidence in paragraph VIII.4 of the Pretrial Order did not eliminate paragraph VIII.2's "at trial" limitation.

[67] *See, e.g.*, *State v. Sweetwater Point, LLC*, 2017 WL 2257377, at *8 (Del. Ch. May 23, 2017) ("In this action to determine which of the two competing parties has a superior claim . . . [e]ach party must establish the strength of its own title first, rather than relying solely on flaws in the competing chain of title.") (citing *Smith v. Smith*, 622 A.2d 642, 646 (Del. 1993) and 65 AM. JUR. 2D *Quieting Title* § 74).

establish the strength of their claim of record title to the Strip.[68] Respondents do not use the 1948 Deed to contradict any evidence petitioner relied on at trial or in its opening brief until page 17.[69] On page 30, respondents again assert their interest in the Strip began in 1948, based on the 1948 Deed.[70] And in the argument section, respondents rely on the 1948 Deed to support their contention they hold record title to the strip.[71] Respondents do not attempt to contradict petitioner's case for another four pages, and do not use the 1948 Deed in that contradiction for another two.[72] The remaining references to the 1948 Deed are used to support respondents' claim of adverse possession—not to "disprove or contradict" or challenge "the accuracy or authenticity" of petitioner's evidence or witness testimony.

As the court has observed, parties include carveouts for rebuttal evidence in pretrial orders because "it is difficult to know in advance whether and what rebuttal evidence will be required." *See In re Oxbow Carbon LLC Unitholder Litig.*, 2017 WL 3207155, at *4 (Del. Ch. July 28, 2017)

---

[68] *See* Consol. Br. 7 ("The original deed to the Hastings Family Farm was given to Jewell and Caddie Hastings in 1948[.]").

[69] *See generally* Consol. Br. 8–17.

[70] *Id.* at 30 n.84.

[71] *Id.* at 32–35.

[72] *Id.* at 36–39.

(discussing rebuttal witnesses). Respondents cannot claim any difficulty here. They knew well before trial what evidence petitioner was relying on to deny respondents' affirmative claim that they had good record title to the Strip, and what evidence they would need to defeat petitioner's denial.[73]

### 3. The Court Cannot Take Judicial Notice of the 1948 Deed

Respondents also argue (1) their post-trial use of the 1948 Deed in an affirmative capacity is permissible because the Pretrial Order includes a carveout for documents capable of being judicially noticed,[74] and (2) I can take judicial notice of the 1948 Deed as a public record.[75] This, too, is incorrect.

Under Delaware Rule of Evidence 201(b)(2), "[t]he court may judicially notice a fact that is not subject to reasonable dispute" if the fact "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." D.R.E. 201(b)(2). Here, the fact for which respondents are asking the court to take judicial notice is that the 1948 Deed's

---

[73] Respondents' effort to blame petitioner for the fact that they did not learn the basis for petitioner's argument about the Hastings Deed (JX 9) until petitioner's expert testified during the first day of trial, *see* Mot. Tr. 35–36, is misguided. Respondents chose to take no discovery. Parties who ask no questions, seek no documents, and take no depositions during discovery cannot complain when they do not learn the answers until trial.

[74] Pretrial Order ¶ VIII.2.

[75] Opp'n ¶¶ 10–14.

metes and bounds description is correct and includes the Strip.[76]  But whether the 1948 Deed's metes and bounds description is correct and includes the Strip is not a fact that can be determined from a source—the 1948 Deed—whose accuracy cannot reasonably be questioned.  If the 1948 Deed is accurate and includes the Strip, then it would appear to conflict with petitioner's chain of deeds, which also claims to cover the Strip.  Neither negates the other; it simply means that the Strip is the intersection—the *vesica piscis*—in a Venn diagram that has petitioner's chain of title in one circle and respondent's chain of title (including the 1948 Deed) in the other.  Both cannot be correct— somebody owns the Strip—so the accuracy of the 1948 Deed, by the very claims at issue in this litigation, is subject to reasonable dispute, making judicial notice inappropriate.

It is one thing to take judicial notice that certain words are written in the 1948 Deed, and another thing entirely to take judicial notice that those words are true.  Respondents insist the court can do both here, but the law says otherwise.  *See, e.g.*, *In re Rural Metro Corp. S'holders Litig.*, 2013 WL 6634009, at *7–8 (Del. Ch. Dec. 17, 2013) (discussing *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59 (Del. 1995), and explaining that the court could take judicial notice of a declaration "to establish when it was filed or to

---

[76] *Id.* ¶¶ 11–13.

identify the statements that [declarant] made" but it could not take judicial notice of that declaration "to establish the truth of its contents"); *Indem. Ins. Corp., RPG v. Cohen*, 2018 WL 487246, at *2 (Del. Ch. Jan. 18, 2018) ("[W]here a filing's contents are subject to reasonable dispute, include views and opinions, or could be contested with the aid of discovery, the court cannot take judicial notice under Rule 201 for the purpose of accepting the statements as adjudicative fact.").

The untenability of respondents' insistence that the court can take judicial notice of the 1948 Deed is all the more apparent in light of Rule 201's factfinding impact. As the Supreme Court has explained, "the effect of taking judicial notice under Rule 201 is to preclude a party from introducing contrary evidence and[,] in effect, direct[] a verdict against him as to the fact noticed, [so] the fact must be one that only an unreasonable person would insist on disputing." *Lebanon Cnty. Emps.' Ret. Fund v. Collis*, 311 A.3d 773, 799 (Del. 2023) (quoting *U.S. v. Jones*, 29 F.3d 1549, 1553–55 (11th Cir. 1994)). In other words, "[i]ndisputability is a prerequisite" to invoking Rule 201. *Id.* The 1948 Deed—for the purposes respondents want the court to consider it— does not qualify for judicial notice by any reasonable measure.

## C.     Exclusion of the 1948 Deed is the Appropriate Remedy

Having determined that respondents' untimely disclosure of the 1948 Deed violated their discovery obligations, the Scheduling Order, and the Pretrial Order, the court turns to the proper remedy for the violation. Petitioner asks the court to order respondents to file a new brief excluding all arguments regarding the 1948 Deed.[77] Respondents do not offer an alternative solution in their opposition.[78]

The well-established policy underlying discovery procedures is that "a trial decision should result from a disinterested search for truth from all the available evidence rather than tactical maneuvers based on the calculated manipulation of evidence and its production." *In re ExamWorks Gp., Inc. S'holder Appraisal Litig.*, 2018 WL 1008439, at *5 (Del. Ch. Feb. 21, 2018) (quoting *Hoey v. Hawkins*, 332 A.2d 403, 405 (Del. 1975)). "A party that disregards the provisions in a [court] order that govern discovery is engaging in discovery abuse." *In re ExamWorks*, 2018 WL 1008439, at *6. And "[a] trial judge has broad discretion to impose sanctions for failure to abide by its orders." *Terramar Retail Centers, LLC v. Marion #2-Seaport Tr. U/A/D June*

---

[77] Mot. ¶ 13.

[78] *See generally* Opp'n.

– 22 –

*21, 2002*, 2018 WL 6331622, at *9 (Del. Ch. Dec. 4, 2018) (quoting *Gallagher v. Long*, 940 A.2d 945 (Del. 2007) (TABLE)).

"In the event this [c]ourt determines that sanctions for discovery abuses are appropriate, the sanction must be tailored to the culpability of the wrongdoer and the harm suffered by the complaining party." *Cartanza v. Cartanza*, 2013 WL 1615767, at *2 (Del. Ch. Apr. 16, 2013) (citing *Beard Rsch., Inc. v. Kates*, 981 A.2d 1175, 1189 (Del. Ch. 2009)). "[T]ypical remedies for late production are to allow additional discovery or to preclude the use of the belatedly produced material." *In re ExamWorks*, 2018 WL 1008439, at *7. "Late production provides grounds for excluding the evidence." *IQ Hldgs., Inc. v. AM. Com. Lines Inc.*, 2012 WL 3877790, at * 2 (Del. Ch. Aug. 30, 2012) (citing *Concord Towers, Inc. v. Long*, 348 A.2d 325, 326 (Del. 1975)). But the court must "balance its duty to admit all relevant and material evidence with its duty to enforce standards of fairness and the Rules[.]" *Concord Towers*, 348 A.2d at 326.

There are two possible remedies here for respondents' untimely disclosure of the 1948 Deed: (1) exclude the 1948 Deed and have the parties proceed on the basis of the evidentiary record assembled during discovery and presented to the court during three days of trial; or (2) admit the 1948 Deed

but reopen the record to allow the parties to take additional discovery on the parties' respective claimed chains of title.

As the factfinder, I prefer to see all evidence relevant to my decision. But litigation is not an unending search for the truth, and I do not think reopening the record is the appropriate, equitable, or just outcome for this case. It would massively expand the scope of discovery on the parties' claimed chains of title to the Strip. The Holland Farm deed, the foundation for petitioner's claim of record title to the Strip, goes back to 1958.[79] The 1948 Deed, now the foundation for respondents' claim of record title to the Strip, goes back (of course) to 1948. The parties would need to trace each chain of deeds—and potentially deeds for surrounding properties—further back in time, as far as would be needed to finally resolve any dispute over record ownership of the Strip.[80] This might include looking not just for deeds, but for other documents relevant to the parties' competing ownership claims

---

[79] *See* JX 1.

[80] Petitioner's counsel made these points during argument on the Motion. *See* Mot. Tr. 16–17 ("[W]e'd have to run the title back further on the Holland Farm, right, so there [are] more documents there . . . . But that doesn't answer the question necessarily . . . . [So] we need to run that deed as far back as we can—at least to the 1900s, turn of the century. We would want to do the same for the Hastings property. More documents, probably, . . . more materials, but also a different expert . . . . Now we're going deep into the title records . . . . [D]epending upon what the title descriptions show from the Holland Farm and the Hastings Farm, you might need to run title for the adjoining properties to tie off things because there is a good chance that some of those deeds are going to raise other questions.").

of record title to the Strip.[81]  And as the court showed in *Sweetwater Point*, the further back title searches go, the harder it gets to determine anything with precision.[82]  And once that expanded discovery record is created, there would be the additional trial days with additional witnesses and perhaps additional experts to help the court begin to make sense of that record.

All of that is too much for this case.  Moreover, neither side has asked me to reopen discovery if I grant the Motion.  Petitioner persuasively argues that doing so would prejudice petitioner, who prepared for, paid for, and has tried a case based on the record assembled during discovery.[83]  Respondents, reject the option outright.[84]  This leaves excluding the 1948 Deed from the evidentiary record as the remedy for respondents' failure to follow the discovery rules, the Scheduling Order, and the Pretrial Order.  Exclusion is a well-recognized remedy for the untimely disclosure of relevant information, particularly at this late stage of a case, so that is the remedy the court orders.

---

[81] *See State v. Sweetwater Point, LLC*, 2017 WL 2257377, at \*9–23 (Del. Ch. May 23, 2017) (tracing competing chains of title back to the 1800s through deeds, wills, assessment records, court reports, and other documents).

[82] *Id.*

[83] Mot. ¶¶ 19–21; Dkt. 66 ¶ 17; Mot. Tr. 17–24.

[84] Opp'n ¶ 15 n.20 (arguing the court should not allow petitioner to supplement the record because petitioner's "alleged harm is of its own chosen trial strategy").

## III.  CONCLUSION

I grant petitioner's Motion to Strike and exclude the 1948 Deed from the evidentiary record.   Respondents must file an amended Post-Trial Answering Brief and Opening Brief on the Counterclaim by February 27, 2026.  After that, petitioner must file its combined reply and answering brief within 30 days of the filing of respondents' amended answering and opening brief, and respondents must file their reply brief within 30 days of the filing of petitioner's combined reply and answering brief.  The parties must contact chambers after petitioner files its combined reply and answering brief to schedule posttrial argument.

This is a Report under Court of Chancery Rule 144(b)(1).  Under Court of Chancery Rule 144(c)(2)(A), exceptions to this ruling are stayed pending issuance of a final report in this case.